Mr. Rhodes, whenever you're ready, come on up. Please, the Court. Your Honors, this case involves five fairly distinct issues. Two legal issues, technical issues regarding whether or not the easement donation satisfied the perpetuity requirement, an issue regarding valuation, and two issues regarding the application of penalties. I plan on focusing my time on the first three issues. As your Honors are aware, this case involves the donation of a conservation easement pursuant to Internal Revenue Code Section 170H. Just last year, this Court analyzed in B.C. Ranch that code section and announced that because it was adopted by an overwhelming majority of Congress, it should be reviewed under the ordinary standard of care as opposed to the strict standard of scrutiny often applied to intentionally created tax incentives. The tax court, your Honors, did the opposite. It read into the code and the regulations requirements which do not exist and which would make compliance with the code virtually impossible, leading to a chilling effect on donations of conservation easements. In applying this standard, the Court first determined that the easement failed to satisfy and to protect the outdoor recreation benefit in perpetuity. The easement deed clearly and unambiguously states that this property shall be used for the substantial and regular use of the general public. That is precisely a parody of what the regulation requires. Moreover, it unambiguously gives the North American Land Trust, the DONE, the right and responsibility to enforce that provision. It does so in the contract. Notwithstanding, the tax court looked to some evidence to determine that nearly a decade after this easement was granted that the public was, in fact, not being able to use a small portion of the easement property. However, your Honors, there is simply no requirement in the legislative history, the code, or the regulations which require a taxpayer, after he enters into an easement deed, to continue to look over the shoulder of the DONE Land Trust to make sure that that land trust is, in fact, enforcing its rights. Well, isn't the problem here, I mean, your problem, that there is what I would call an easement deed or the donation about the right of the public to have access? There's just one sentence, I think, that the public doesn't have an unfettered right to access the property. Yes, your Honor, and I think describing it as one sentence is an important aspect. You've got numerous, very detailed, specific provisions in this easement deed describing that it shall provide for substantial and regular use of the general public, which is what the regulation requires. You do have a provision, section 6.14, that says nothing in that contract shall be interpreted as providing a right of unfettered access to the public. The Commissioner argued... I don't know, I feel sorry for the lawyer that put that thing in there. It looks to me like that was part of the form that needed to come out. So, maybe you're going to win one way or the other, maybe not here, but maybe the law firm. Was that your law firm? I would hate to think so. No, your Honor, our law firm did not draft that deed. However... Is there a way to square this? I mean, is it meaningful to say that the public has substantial and regular use, but not a right? Yes, your Honor. I think, first of all, South Carolina, like virtually every other law, requires the court to look to the four corners of the document and, when possible, to give meaning to each and every provision. Moreover, it's a clear construction of contract that specific provisions should rule over general, certainly general interpretive provisions. When read in that context, 6.14 clearly means that, although the public has to have substantial and regular use of this property, there can be limitations on their unfettered right of access. Just like any public park or public golf course, there has to be some limitations on a right of access. For instance, the public has to come and check in with the pro shop and pay a fee, although the easement deed says that has to be a fee that's not going to prohibit substantial and regular use. Moreover, the public can't come on the golf course at night and build a bonfire on the greens, for instance. 6.14 merely states, like every public park, every public golf course, that the public does not have an unfettered right of access to the property. That's a plausible explanation. Maybe it's the right one. We'll see. Is it — was there a case law at the time that you have pointed us to and I'm not picking up on that makes this distinction that you're suggesting, maybe the difference between a license and a right, and where we can more clearly accept that that's a reasonable interpretation, South Carolina law or a more general law on conservation easements? Well, first of all, Your Honor, I think Ecclesiastes Production Ministries, which gives a pretty good overview under South Carolina law how you have to interpret provisions in a contract to give them all meaning, substantially supports the taxpayer's position. I understood your general concept, but can you narrow this down, focus in, was there law at the time, not that that would be outcome determinative, that that provision could be seen as responding to, where it had been held, provisions of such nature had been held, interpreted in a certain way consistent with what you're telling us? Your Honor, it is — there were no cases on this issue, primarily because public recreation easements, which provide for substantial and regular use, are generally not the type of easements that are used. Normally, a taxpayer reserves the right not to allow the public substantial and regular use, which is why the specific provision that literally parrots the regulation requiring substantial and regular use made this easement different than most easements that you see in this area, and there actually has been no cases on such an easement. Did they post the property? Yes, Your Honor. Just like any public golf course or public park would do, there were requirements about whether or not the public had an unfettered right of access, so they could not go into certain areas without, for instance, checking in with the pro shop or the gatehouse. But Your Honor, I think that's common with, again, any public park or public golf course. Counsel, looking at the overall easement, it seems to me, and correct me, there are three basic plots. You got the golf course. You have a place where two houses were to be built. I don't know if they were built or not, and then you have the park, which is creating some of the concern about exclusion. Is that correct? Are there — is there a different issue as to different parts of that? It seems to me that the houses, definitely the public is excluded. Are you claiming the easement continues as to those two houses, and that somehow is justified in some way? No, Your Honor, and that's a good point. So at the time of this easement donation, there actually was no golf course. There was a layout for the golf course. Golf course had ceased. Golf course had ceased? Yes, Your Honor. I'm understanding there was a functioning — there was a golf course built, but had not been particularly successful and was no longer being used when this easement was done? Yes, Your Honor. Two years prior to the easement donation, golf course activities had stopped, and this was all essentially green space. When the easement was donated, the plan was to create the golf course going again, but the easement deed merely requires that it either be used for golf or some other passive recreational use, i.e., a park. It was the case that a certain portion of this property became a functioning golf course for the public again, and then a certain portion — For the public in the sense of they joined the course, paid the fee, they would be allowed to use it, but you didn't have to be a homeowner or own property in the area? Correct, Your Honor. As long as — and the easement deed 2.41 is very specific. The golf course could never charge fees that would prohibit the substantial and regular use or that would make it become effectively a private golf course. The easement deed specifically addressed that issue. Didn't the park go against that? It was — aren't the only park users those who were homeowners or otherwise that were not — couldn't just come from the general public? There's conflicting evidence about that, but I think a couple important points to that issue. First of all, there was no park or no posting until two years after this easement was donated. The taxpayer had issued after it donated the easement, sold the property, and then relocated to Dallas, Texas. And at that point, it had no legal right, ability, or reason to monitor what was going on. It is the case that two years subsequent to that, a park, the Bill Baker Park, was built on the back portion of this property. And the tax court did determine, based on some very flimsy evidence, that the public, all the public, was not being prohibited use to that park. However, the taxpayer had no reason to be aware of that and had no right to force the Is the — this was a huge deduction. Is the tax treatment of that deduction involved in the Chapter 11 in any way? No, Your Honor, it is not. The confusion with the bankruptcy issue is that the commissioner's expert, Mr. Duncan, when he valued this property, he determined that it was subject to a use restriction encumbering the property requiring it to be used as a golf course for a number of years. However, that use restriction was removed through the bankruptcy proceedings and no longer encumbered the property as of the date of the easement. And you'll see that the tax court itself does not even mention that use restriction as an impediment to developing this property. So what — so what impact did that have on the Chapter 11, then? I mean, who is it that removed the easement, the — what you just described? Who is it that did that? The use restriction? Yeah. Your Honor, the bankruptcy court removed that use restriction. Now why? It was determined to be in the best interest of — well, backing up, the Homeowners' Association, the POA, had objected to the removal of the use restriction. The bankruptcy court, upon agreement of the parties and the determination that it was in the best interest of the bankruptcy proceeding, did remove that use restriction. And at that point, the property could have been developed. I mean, how did that help in the bankruptcy proceeding? You know, this actually is relevant. How did that help in the bankruptcy proceeding? It must have affected some of the claims or something. Your Honor — Tax claim or what? I mean, maybe the answer is that the record doesn't show this or you don't know the answer, and that's okay. That's a fair response. But it's all very strange, what happened here. A bankruptcy court removing a use restriction? There's got to have been a really important reason for that to have happened. Well, Your Honor, the taxpayer had various claims that the use restriction on the property was not enforceable under South Carolina and other law, including that the Property Owners' Association was not — did not have standing to raise the use restriction, and that was all resolved in the bankruptcy court as a matter of its decision. Apparently, on its interpretation of the relevant law. And that may have had to do with the amount of the tax claim in the case or what? No, Your Honor. Because, I mean, with that huge deduction, if that got litigated in the bankruptcy court, then the bankruptcy court removes the restriction. It's all very peculiar. Yes, Your Honor, and I think it did lead to some confusion as to timing, especially in the Commissioner's Expert Report. But I think the tax court and everybody else has recognized that that use restriction did not encumber the property as of the date of the easement, which has led to some confusion about the conflicting values reported. For instance, in the bankruptcy court, it was reported as $2.3 million and $3.5 million. All of that was when it was subject to this use restriction. And essentially because, as the taxpayer's expert testified, Mr. Bennett, the bankruptcy court uses liquidation values. And so it did not anticipate what this property could have been worth had that use restriction been removed. Oh, okay. It's your point that by getting rid of the covenant, that unleashed a substantial amount of value, right? It could be now developed. Yes, Your Honor. What is your evidence that that value was, I think you're claiming $13.4 million? The taxpayer's expert, Mr. Ville, valued it at that, determining it had a development potential. Your Honor, I don't think there's much disagreement that had this property been able to be developed, it was located along a major highway leading into Hilton Head, South Carolina, virtually surrounded by high-end commercial development. It was some of the last remaining green space. I'm sorry, Your Honor. I'm going to... I take it that's why the neighbors pulled in to try to protect it. Yes, Your Honor. You can finish your answer. You exchanged with Judge Ho. Don't worry about the time. I'm sorry. No, I said go ahead and finish your answer with Judge Ho. Don't worry about the red light. Yes, Your Honor. That is why they objected. In fact, Mr. Hagan, who was the POA's president, testified that they were very concerned about getting this use restriction on the property because they were so concerned it would be developed. In fact, he testified that they could never have afforded the property had the easement not been placed on it because its development potential was, in their mind, obviously evident. All right, counsel. Good morning. May it please the Court, my name is Jennifer Rubin and I represent the Commission of Internal Revenue in this case. Consistent with what my opponent did, I'm going to start with the conservation purpose and then we turn to valuation after that. One of the most important things that was said in that opening argument, and I think this is as close to a quote as I can get it, normally an easement normally reserves the right not to permit access. He says, but this is different. This was a public recreation easement. It's not just a public recreation easement. This easement threw everything, including the kitchen sink in and said, it's for all of these different conservation purposes. And all the conservation purposes, as Anne Taylor Schwing, our amicus, the amicus in support of the Commissioner, points out, have different access requirements. And this is conceded in the opening argument that, in fact, normally for a lot of these other types of easements, such as open space easements, that's in this easement deed. Such as natural habitat easements, that's in this easement deed. They may not require public access. They may even require exclusion of the public. And you asked if there's any source that has been cited by anybody to say, well, what does a provision like 6.14 actually mean? Well, according to Ms. Schwing and the conservation easement handbook that she cites, this is the sort of provision traditionally used to say that the public can be excluded absolutely from the property. And maybe perhaps Judge King's suggestion is correct. This was an error that they put in all these different access. But perhaps, in fact, it was done because this is a natural habitat easement, as well as public recreation. Perhaps it was done because it's an open space easement, as well as public recreation. And so what you really have here The other way to look at it, though, I think which is quite fair from opposing side, is that depending on what South Carolina law says, or wherever this phrase comes from, not limiting the public's right of access to the terms of whatever the ultimate use of this land is, could well override what ultimately is decided to be done, such as a golf course. And if that exclusion wasn't or limitation wasn't there, there would be a claim that I don't have to pay these fees, I don't have to join this golf club, I can just come in and use it. Isn't that a consistent way to read it? I don't believe so. I've never seen anything that reads this provision consistently with that. And I don't think it's consistent with the plain, unambiguous language. Nothing shall be construed to give the right of access. It's consistent with the concept that you can exclude, which is, in fact, how the subsequent owner has purchased it. And if you look at the third restatement of property, Section 4.1, that's the servitude provision, how would a reasonable, ordinary purchaser who is subject to this easement read it? And I think a reasonable purchaser would say, I certainly can exclude from at least a healthy chunk of this property. Which is how the POA has interpreted it. That is precisely what Mike Hagan, the former POA president, stated, and that's what they did when they did this park. And it's not simply that something is, that there's posts put up that say, oh, you can't come on here at a certain time. The park is absolutely no trespassing marked. When you come into this property, you're given a tag that says, you can only come in here for these purposes. Any other purposes, trespassing. So, certainly, healthy chunks, and this is a 50-acre park. Healthy chunks of this property can be, the public can be excluded absolutely. And there's no way to determine, based on this easement deed, how much of this property might be, in fact, available to the public. Now, on appeal, taxpayer has chosen to focus entirely on public recreation. But a judge faced with interpreting this, if this was just put forward before judges, faced with an easement deed that has all of these different provisions. So, my opponent says general versus specific. This seems pretty specific when you start talking about possibly needing to exclude somebody because of natural habitat. It seems awfully specific to say, oh, this is an open space easement. We don't need to let the public on it to allow them to enjoy vistas. So, whether something is general or specific may depend on which purpose you're looking at. And the fact that they want you to only look at one purpose does not change the fact that this deed was written to include so many things with so many different access. Let me be sure I understand you. What you're saying is that there are multiple uses permitted under this deed. And this, the public access, and with each one of these, there are different access rights or lack thereof. Am I getting it? I think you're very much getting at it. And what they want to do, essentially, is either ignore 6.14 or rewrite it in some way that is inconsistent with the traditional use of that sort of language, as well as with the plain, unambiguous language. Now, you can imagine a provision that might say you could put time, place, manner restrictions on this property as long as the public still gets substantial and regular use. That's not what this provision says. It says nothing in this conservation easement shall be construed to create any right of access to the conservation area by the public. A reasonable person reading this language would say, I can exclude people from the property. And that's why we're pointing to what the POA has done after purchasing the property and what NAHD has not done, namely not prevent the POA from doing after purchasing the property. They've excluded people from chunks of this property. So how do you square all that with 2.4.1? I think you could read it precisely as the POA has done, which says, I need to allow public recreation on some part of this property, but it doesn't need to be all of it. Maybe it doesn't need to be a lot of it. And I don't know that, you know, I think that's a pretty reasonable interpretation. And, again, that's how the POA, the subsequent purchaser, is reading it, and doesn't seem to disagree because the POA is not being subtle. You mentioned the 50 acres. What percentage, as a practical matter, has been excluded from the public under your theory? I believe that's a pretty large portion. I'm not sure of the exact acreage, but this used to be a 27-hole course, and they maintained 18 holes and turned much of the rest of it into this private park. So I think that's a pretty substantial portion. So is that a violation of this provision? Come again? I'm wondering, I'm just looking at 2.4.1. It would seem to me that the behavior that you're describing might be argued as a violation of this easement. I think if you're trying to read all these provisions together, you could very easily read it precisely as the POA has done, which is I need to allow the public to access some portion of this property for public recreation, but not anywhere near all of it. And because of that, we would say it does not, in fact, protect the entire property for the conservation purpose of public recreation. And that has to be the case? I mean, you know, say you had 2,000 acres, and let's say 200 acres, you could keep the public out. That would not qualify for the deduction? You know, I'm not sure where your limitation might be, but part of the problem here is that there's no express limitation on the scope of 6.14. You might say you need to have some public access, but it could be a very small portion of this land. So even if, let's say this was a 2,000-acre plot, and the POA had kept 200 for itself, that wouldn't mean that under this provision, why couldn't they do 1,000 acres of that 2,000-acre plot? Well, what do you make of the final clause in 2.4.1 specifically says they can't reduce the property to a private membership club? They can't reduce the entire property to a private membership club. That certainly seems to be true. But they certainly have maintained 50 acres of it as a private park, and NAWP doesn't seem to have any problem with this. Again, they're not being subtle. So this would seem to say that the interpretation that some portion of this land, possibly even a large portion of this land, can be maintained for the private use of the owner of the land is a reasonable one. And I think that whether 6.14 was put in there very deliberately or sloppily, it's in there, and that's what this deed is, and that's what the POA purchased this land under, is a deed that has this provision. So, you know, it seems like a very reasonable interpretation the POA has made. It doesn't seem that reasonable to me. The easement is referred to as a conservation easement. There's an explicit use by general public clause. I'll just take as a given your statement that that's not being practiced, but it seems to me that that's a violation of this provision. If this was only a public — again, this has multiple different conservation purposes. And if you read 6.14 in the way that taxpayers are now urging you, that's going to be inconsistent with the natural habitat conservation purpose, which is in the deed. Maybe it's inconsistent with the open space provision. Certainly it's not — you do not have to have public access to have an open space easement. So the fact — They try to reconcile it by saying you have to have it open and available to the public, but it's not an absolute right. They don't have a property right in it. They have an access to it under reasonable time, place, and manner restrictions. But it's a right to access. So if you don't have a right to access, then you can be excluded. There's nothing in here that looks like a time, place, manner, and that's not how it's traditionally been used in conservation easements, as you can see from the conservation easement handbook. And this is — Well, when you say that something has to be open and substantial — open for substantial and regular use by the general public for recreation or outdoor activity, and you say, but it's not a right, what I sort of assume is, okay, you can't come in at midnight. You can't come in and occupy the entire space for your own party. It has to be available for other people. Well, let me put you this way. There's a specific provision that says you can charge a fee, but it can't be unreasonably excessive. Right. It can't be reduced to a private membership club. That's a time, place, manner type of provision. Why would that even be necessary if 6.14 meant what they say it means? Under their interpretation, you have no right to access, so I can charge you a reasonable fee. Basically, a time, place, manner provision looks different than this. This is not a time, place, manner provision saying, oh, you can limit to reasonable times. This is a provision that says you don't have a right to access the property. And, again, since there's multiple conservation purposes, that would indicate that, you know, yeah, so you can start saying we're going to exclude you from chunks of this property. And you can't really privilege 2.41 over 6.14. They're both in there. They both may serve different purposes. The fact that on appeal they've decided to focus on only one of these purposes doesn't mean the other ones have disappeared. Turning to valuation, the use restriction, I'd like to go a little bit over sort of the values that were claimed and what happened with the use restriction, because I agree with you. There's something a little strange about it. So PBBM bought this property for just a little over $2.4 million in 2002. In 2006, once they were in bankruptcy, they told the court, well, it's worth $3.5 million. Then they filed a disclosure statement later that year saying it's worth $2.6 million, that the value had gone down because the property was deteriorating, I believe, was the reason for why it had gone down. So in October 2006, they initiated an adverse proceeding to try to get rid of this use restriction. In July 2007, they moved to approve a settlement with the POA. What's interesting about this settlement is that PBBM and the Property Owners Association agreed that whatever happened with the use restriction in this bankruptcy proceeding was not going to have any collateral estoppel effect on the Property Owners Association. And that's going to be Exhibit 29J at 13. The association agreed that they would forbear from trying to enforce it for 180 days unless there was an attempt to develop the property. And then they agreed that if there was a conservation easement put in, their forbearance would continue indefinitely. So basically, if PBBM had taken any attempt to develop this property instead of putting in a conservation easement, the POA had reserved the right to assert the use restriction. Now, I know that PBBM has stated, oh, we don't think that they had standing. They've never provided any analysis of this. No court has ever made a finding that there was no standing. It certainly seems like the POA has a reasonable argument to be third-party beneficiaries to this use restriction. So certainly I think that there's a plausible claim to say that the POA could still enforce if there had been any attempt to develop instead of a conservation easement being put in place. If I'm just curious, then why did the POA bother to buy the land if their rights are all protected? They simply bought the land to ensure there would be no development, but also because they wanted access to certain lagoon pools. These lagoon pools were part of the drainage system for the neighborhood, and they were on this property. I think they may have been incorporated into the golf course. And he also, Mike Hagan also made clear that, I think this is transcript, I believe it's 1025, that, in fact, he also felt like the zoning would prevent development. So, yes, they were making sure that they were going to have no development. I think they also wanted to make sure that they had a good golf course, no development, and the lagoon pools would be maintained to ensure proper drainage of the neighborhood.  So then, July 2007, taxpayer files the second amended or reorganization plan. Under that plan, many creditors did not get full payment. Then, also on that same date, the taxpayer moved to approve the sale of the property to the taxpayer, which very, excuse me, I misspoke. It was actually August 15, 2007, they moved to get approval of the sale for $2.3 million and specifically said this is fair value, this is fair market value, and did not at any point say, assuming that the use restriction is still in place. And, in fact, everything they needed to do other than get final judgments entered had already been done. The court didn't make any findings about the use restriction. It did it based on settlements and defaults. They reached a settlement with a development company. Taxpayer reached a settlement with the Property Owners Association. There was a default by the entity that they bought this property from, RHCC. And so once the sale to the Property Owners Association was authorized, then they started getting these final judgments occurred. And they claimed, oh, yeah, after that there was this huge spike in value, and then we put this conservation easement on and we got a huge deduction that, you know, the creditors got no benefit from in the bankruptcy, just us. You know, I think the more reasonable interpretation here is real simple. This property, there were a lot of uncertainties. There were a lot of reasons why it might not be able to be developed. There was this use restriction that was still out there. The Property Association could still turn around and try to enforce it. There were zoning problems, and you see the testimony from Austin. And we also know, look, this was a golf course, and it's very reasonable to say, yeah, you know, you couldn't just try to develop it. And so at all times it had a value somewhere between $2.3 and $2.6 million at most. And so what you have here is a taxpayer who took an extraordinarily inflated value. I mean, you say $2.3, $2. whatever. Right. And the taxpayer claimed what, $15 million or something? $15 million, $160,000. And, you know, I think that what really happened here is you had a tax court judge who looked at all the evidence and said, I'm not buying what the taxpayers' experts are saying. I believe there were so many uncertainties here that no one's going to pay a premium for this property. So I think it was worth $2.4 million, consistent with what PBBM paid for it before the easement was put on. It was worth $2.3 million, consistent with what the Property Owners Association paid and also what was represented to the bankruptcy court. And the fact of the matter is this was a for-profit business that bought this land, owned by an experienced businessman. There's no competent evidence to say they were motivated by anything other than profits. If they thought that they could get all of this money for this property, they would have done so. And the creditors would have been better off, too. And so what we really have here is a lot of game playing. I'd like to turn, I only have about half a minute left, I'd like to turn really quickly to the gross valuation misstatement penalty. Here, as we just said, there's a huge discrepancy between the actual value of $100,000 for this easement and the claimed value. We believe that Woods abrogated the Todd's-Heasley line of cases, as was stated in Chemtech, which leaves a clean slate here. And here it's very reasonable to say that all the value above that $100,000 is subject to the gross valuation misstatement penalty, just as Alpha One would say it's consistent with the policy behind it and with the claimed language of the provision. All right, Kelly. Thank you. Thank you very much. We're ready for rebuttal. May it please the Court, Your Honors. I'd like to first address the statement that this right of access somehow applied to just a specific piece of property. Clearly, the easement deed states that the entire property, defined as the entire 241 acres, shall be used for the substantial and regular use of the general public. There is no way by looking at the four corners of this easement deed to determine that 6.14 somehow applied to a yet-to-be-created 50-acre park. And although the subsequent acts of the Homeowners Association and the North American Land Trust, we believe are irrelevant for determining the contract, the park is a mere one-ninth of this entire property, roughly 10%. Clearly, the vast majority of the property is still being used for the substantial and regular use of the general public. As to the issue of value, the Commissioner keeps referencing the use restriction. This was argued in brief in court. The tax court never mentions the use restriction as an impediment to value. It was gone as of the date of the easement. The tax court did not appear to find it to be a problem. This is important because in White House, this court stated that the tax court is required to aid this court with a clear understanding of the ground or basis of its decision, specifically dealing with the highest and best use issue. It also said it is necessary for the tax court to make subsidiary findings necessary to render its ultimate conclusions comprehensible. If the tax court never referenced this use restriction, which Commissioner relies on, then clearly it cannot be the basis of the tax court's decision. The White House is talking about clarity, and it does seem to me that your friend on the other side does have a point that the use restriction is just too dominant in the facts of this case. If it wasn't restated at the time when the decision was made, it was still clearly part of the case. This is one way to look at it. What do you say to that? Why would it have to be articulated when it is so central to what the debate has been about? If, as was the case, the use restriction no longer encumbered the property from a legal perspective on the date of the issue, then if the court determined that maybe it had some impact on value, then I think it was incumbent upon the tax court to describe what the effect of that was, such that this court could analyze its findings. For that reason alone, this case should be remanded to determine whether or not the tax court even relied on that restriction. Moreover, all these values that are being stated are all in reference to the property prior to the use restriction. The use restriction did not encumber the property as of the date of the easement. The Homeowners Association knew that and recognized that, which is, again, why Mr. Hagan testified that without the easement, after the use restriction was removed, without the easement, the Property Owners Association could not have afforded this property. And that's why they were so dead set on the easement, because they were concerned about this development potential. Your Honors, I'd like to turn quickly to the gross valuation misstatement penalty. Should this court determine that the taxpayer loses on one of these two technical issues, those issues are in no way attributable to the valuation issue. And, yes, the Supreme Court did abrogate a line of cases in this court, but it did not overrule Todd. Todd is a specific instance in which a technical issue was unrelated to valuation. Subsequently, in Baymont, in some cases, Todd was extended to a different set of cases in which value was intertwined with the basis for the disallowance. But Woods clearly states that there has to be an interconnection between valuation and the reason for disallowance. In those, it was a basis misstatement. This court recognized that distinction pretty clearly recently in the Schaeffler case, in the limited holding of Woods. All right, Counsel. Thank you both sides for bringing this.